# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**DARREN LEE POWELL,**

    **Plaintiff,**

    v.

**JACK LAURIE,** et al.,

    **Defendants.**

Case No. 17-3031-SAC-DJW

## MEMORANDUM AND ORDER

On February 27, 2017, Plaintiff, a prisoner appearing pro se, filed a 42 U.S.C. § 1983 civil rights complaint. For the reasons discussed below, the Court has determined that some of Plaintiff's claims in his Complaint are subject to dismissal without prejudice, while others may proceed. However, the Court will provide Plaintiff an opportunity to correct the deficient claims by filing an Amended Complaint within twenty-one days of this Memorandum and Order.

## I.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency. *See* 28 U.S.C. § 1915(e)(2). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

To survive this review, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying the

*Twombly* standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Leverington v. City of Colo. Springs,* 643 F.3d 719, 723 (10th Cir. 2011).

While a pro se plaintiff's complaint must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), pro se status does not relieve the plaintiff of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). In addressing a claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id.*

**II.    Complaint**

In accordance with the standards outlined above, the Court assumes the truth of the factual allegations made in Plaintiff's complaint for purposes of conducting the initial screening. Plaintiff is an inmate at the Atchison County Jail ("ACJ"). He has been pursuing a separate federal civil rights action in this Court against AJC officials related to medical care (Case No.

16-3251-SAC-DJW). In furtherance of that action, he made several requests to access a law library. Defendant Jack Laurie, Sheriff of Atchison County, in a letter responding to requests filed by Plaintiff, told Plaintiff there is no law library at the jail, and that inmates have access to the courts through the U.S. Mail, free notary service, their attorneys, the phone system, and the internal mail system at the Atchison County District Court. Defendant Travis Wright, Captain at ACJ, told Plaintiff that he needs to write to the court to use a law library. At some point, Defendant Wright posted a memo in the jail, which stated that "there is no law library because this is a county jail and one isn't required."

Also in furtherance of his other federal civil rights lawsuit, Plaintiff ordered a soft-bound copy of the *Jailhouse Lawyer's Manual*. ACJ staff did not notify him of the receipt of the book, then Defendant Amber Martin, Sergeant at ACJ, told him he could not have the book in the jail because it was too thick, and he would have to use the multipurpose room in order to read it. In addition, Defendant Martin read legal documents Plaintiff gave to her for copying, refused to make copies because Plaintiff is "suing the jail," and retained the documents for six days so Defendant Wright could review them. In response to a request from Plaintiff asking how to get copies of legal documents, Defendant Wright wrote, "You use a pen and paper and make copies. The Sheriff's office will not make copies for you." Plaintiff filed grievances related to all of these complaints.

Finally, Plaintiff alleges that on December 7, 2016, Defendant Wright asked him why he was filing so many grievances, then told Plaintiff he would not be allowed a trustee job, copies, or "anything other than the minimal." Defendant Wright further told Plaintiff he would not get a sentence modification since he was filing suit against ACJ. Plaintiff had a hearing in state court on January 20, 2017, to consider his request for sentence modification, and Defendant Wright

3

testified that Plaintiff was a behavior problem. The state court denied Plaintiff's request to modify his sentence.

Plaintiff's request for relief seeks compensatory damages in the amount of $300,000.

## III.    Analysis

After reviewing Plaintiff's complaint with the standards set out above in mind, the Court finds that some of the complaint is subject to summary dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2) for the following reasons.

### Count I — Denial of Publication

Count I of Plaintiff's complaint alleges the violation of his constitutional rights in connection with his purchase and use of the *Jailhouse Lawyer's Manual*. Inmates have a First Amendment right to receive information while in jail to the extent the right is not inconsistent with the inmate's status as a prisoner or the legitimate penological objectives of the jail. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a jail regulation impinges on prisoners' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Jones v. Salt Lake County*, 503 F.3d 1147, 1152 (10th Cir. 2007), *quoting Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff states that jail staff told him he was not allowed to keep the book with him because it is too thick. At least one court has found a prison regulation restricting the size of books prisoners can possess is reasonable because it is related to legitimate penological interests of safety and security.[1] *Azukas v. Arnone*, 2017 WL 1282196, at *3 (D. Conn. March 31, 2017). It appears Plaintiff's access to the book was restricted but not completely denied. While Plaintiff has stated that he can only look at the book "upstairs" and that he was told he would "have to use

---

[1] Here, no Defendant has been served, and thus no one has argued such a restriction is reasonable because it is related to legitimate penological interests.

the multipurpose room in order to read it," inmates are not given free reign of a prison. Thus, it is possible this restriction may be unduly burdensome. It is equally plausible that the restriction of which Plaintiff complains may be content-based, as it presumably dispenses information that helps inmates advance their legal cases, many of which may be asserted against the very people restricting access to this book. Undoubtedly, Plaintiff could provide more facts, such as when Plaintiff is allowed to go "upstairs" to the multipurpose room or why being permitted only to read the book in the multipurpose room is, in itself, burdensome. But Plaintiffs need not plead every fact, only enough to state a plausible claim. Plaintiff has done so.

### Count II — Denial of Adequate Law Library

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). That right requires prison officials to assist inmates so that they have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825. The right of access to the courts extends to prisoners in county jails. *Housley v. Dodson*, 41 F.3d 597, 598 (10th Cir. 1999), *citing Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985). However, prisoners do not have an abstract, free-standing right to a law library. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state an actionable claim, a prisoner must demonstrate the alleged shortcomings of the legal assistance provided by the jail hindered his efforts to pursue a legal claim. *Id.* In other words, a claimant must show he suffered actual harm or prejudice as a result of the lack of legal resources. Similarly, "[p]hotocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress." *Muhammad v. Collins*, 241 F. App'x 498, 499 (10th Cir. 2007) (citing *Carper v. DeLand,* 54 F.3d 613, 616-17 (10th Cir. 1995); and *Jones v. Franzen*,

697 F.2d 801, 803 (7th Cir. 1983) ("[T]he right to Xerox" exists for the purpose of filing court documents where duplication is required)).

In Count II, Plaintiff alleges his lack of access to a law library resulted in his first civil rights action, Case 16-3251-SAC-DJW, being dismissed. Specifically, Plaintiff states he "couldn't follow up on federal rules of procedure." (Doc. 1 at 4.) If this were correct, it is the type of harm that could support a denial of access to the courts claim. *See id.* However, Plaintiff's allegation is not *entirely* true. His case (16-3251) was dismissed without prejudice by this Court because Plaintiff failed to pay the initial filing fee as ordered by the Court. (*See* Doc. 4, Case No. 16-3251-SAC-DJW.) That dismissal was not the result of an inability to do legal research, but resulted from Plaintiff's failure to pay the initial filing fee of $15.40 in compliance with a Court order. In his second motion to reopen that case, Plaintiff explained that "the jail in which he is held would not explain how to submit funds from his inmate account. He then sent a letter to his wife, who submitted payment on his behalf." (*See* Doc. 8, Case No. 16-3251-SAC-DJW.) Plaintiff's case was reopened by the Court after the initial filing fee was paid (*See* Doc. 8, Case No. 16-3251-SAC-DJW). In Count V, Plaintiff alleges he was denied access to the courts because ACJ staff refused to make photocopies of legal paperwork for him.

During screening, the Court must construe the facts, and any reasonable inferences therefrom, in a light most favorable to Plaintiff. In Case 16-3251, Plaintiff told the Court that the jail would not advise on how to transfer the initial filing fee, which was ordered by the Court, from the jail to the Court. Here, Plaintiff alleges that he was denied access to the law library and thus could not consult the federal rules of procedure. The context of these two statements leads to the reasonable inference that Plaintiff sought to consult the Federal Rules of Civil Procedure (or the Local Rules for the District of Kansas) in order to see whether they provided information

6

regarding how to transfer payment from the jail to the Court. Information that the jail refused to provide, probably because the jail and its officers were being sued. Plaintiff alleges that the dismissal of Case 16-3251 constitutes prejudice. The Court could find that Plaintiff has not been prejudiced because Case 16-3215 was ultimately reopened after he paid the filing fee. However, the fact that 16-3215 was then reopened does not erase the fact that Plaintiff suffered a prejudice, albeit a temporary one: his case was dismissed for sixteen days, with no guarantee that the Court would reopen his case. Holding that because a court later cures the alleged prejudice would result in circular logic: court controls the determination of whether an inmate was prejudice while simultaneously being able to cure such prejudice, which when done in tandem insulates a jail from the very conduct this type of claim is.

### Count III — Right to Privacy

Plaintiff claims he has a right to privacy in his legal papers that was violated by ACJ staff when they read papers he gave them for copying. Plaintiff states he "gave a legal document to a correctional officer to get copys. [sic] Sergeant Amber Martin read the paperwork and told me she would make copies cause I'm suing the jail. Asked for documents to be returned, told had to talk to Captain, took 6 days to get papers returned." (Doc. 1 at 5.) However, Plaintiff does not specify what "legal document(s)" he wanted copied, explain the jail's policy on copying, discuss the relevance of the six-day delay, or explain the relevance, if any, of the fact that in Count V he alleges the jail refused to make said copies.

The Fourth Amendment right to privacy depends on whether the person claiming the protection of the right has a legitimate, reasonable expectation of privacy. *U.S. v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009). Prisoners have a generally reduced reasonable expectation of privacy because society recognizes that loss of privacy is an "inherent incident[] of

confinement." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). Courts have found no expectation of privacy in circumstances where a prisoner *voluntarily* gives legal papers to a jail staff member for copying—even where jail policy prohibited staff from reading the document they were copying. *See Frazier v. Zavaras*, 2011 WL 4537001, at *6-*7 (D. Colo. 2011). Moreover, if the document was intended to be filed with a court, Plaintiff had no reasonable expectation of privacy in it because the right of privacy does not protect information that is readily available to the public, as are most documents filed with a court. *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995).

Here, there is not enough information to determine the validity of Plaintiff's claim. The Court therefore will allow Plaintiff to file an Amended Complaint that addresses the concerns raised above.

**Count IV – Retaliation**

In Count IV, Plaintiff alleges that Captain Wright threatened various actions and testified falsely about Plaintiff in retaliation for Plaintiff filing grievances and a lawsuit against the jail.

To plead a plausible claim of retaliation, plaintiff must plausibly demonstrate (1) that he "was engaged in constitutionally protected activity"; (2) that a "defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The filing of an administrative grievance is a constitutionally protected activity that can satisfy the first element, as is the filing of a civil rights lawsuit. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Gee v.*

*Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996).

To satisfy the second element of a retaliation claim, Plaintiff must show Defendant Wright's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to file grievances or lawsuits.

Plaintiff claims Captain Wright told him that he would not be allowed a trustee job, copies, or "anything other than the minimal." (Doc. 1 at 6.) Plaintiff also stated in a letter to Sheriff Laurie dated December 30, 2016, attached to his complaint as an exhibit, that Captain Wright "told me I will not get a trustee job or sentence mod since I'm filing suit." (Doc. 1-1 at 3.) These are threats rather than actions. Threats or taunts are not sufficient to make out a constitutional violation. *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001). The only action Plaintiff alleges Defendant Wright took is that he "lied to court by saying [Plaintiff] was a behavior problem to all staff" at Plaintiff's sentence modification hearing on January 20, 2017. (Doc. 1 at 6.) This is more than a threat, so the next question is whether it "caused [Plaintiff] to suffer an injury." *See Shero*, 510 F.3d at 1203. Plaintiff states he was denied a modification of his sentence. While he does not allege Defendant Wright's testimony caused the denial, that is a reasonable inference sufficient to survive screening pursuant to § 1915. Ultimately, Plaintiff must allege, and support his allegation, that he was denied a modification of his sentence *because of Defendant Wright's testimony*.

To meet the third element of a retaliation claim, a prisoner must "show that a retaliatory motive was the but-for cause of the challenged adverse action." *Strope v. McKune*, 382 F. App'x 705, 710 (10th Cir. 2010) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). In this case, Plaintiff must show that Defendant Wright would not have testified that Plaintiff had a

9

behavior problem but for Plaintiff filing grievances and a lawsuit against the jail. An inference of but for causation arises where the defendant was aware of the protected activity, the plaintiff directed his complaint to the defendant's actions, and the alleged retaliatory act was in close temporal proximity to the protected activity. *Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Gee*, 627 F.3d at 1189.).

Here, Defendant Wright was aware of the grievances and lawsuit, some of the grievances were directed to his actions, and his allegedly false testimony occurred within weeks of Plaintiff submitting his grievances and filing his first lawsuit. Plaintiff's December 30, 2016, letter to Sheriff Laurie ("[Captain Wright] already told me I will not get a trustee job or sentence mod since I'm filing suit") supports the inference that Defendant Wright's testimony at the hearing was substantially motivated by a desire to retaliate against Plaintiff for his constitutionally protected conduct. For these reasons, Plaintiff has sufficiently pleaded a retaliation claim.

**Count V — Refusal to Make Copies**

To the extent the jail's refusal to make copies of Plaintiff's legal work constitutes a separate, second claim of denial of access to the courts,[2] the Court would dismiss it because Plaintiff's Complaint contains no allegations specifically showing he suffered prejudice *because* the jail's refused to make copies of his legal work.[3] Because the Court is permitting Plaintiff to file an Amended Complaint with respect to Count III, the Court grants Plaintiff the opportunity to make such allegations in his Amended Complaint.

---

[2] The Court believes that Count II (Denial of Adequate Law Library) and Count V (Refusal to Make Copies) may allege a single constitutional violation: a denial of access to the courts. However, whether these counts should be analyzed as a single count or two separate counts of denial of access to the courts is a decision the undersigned leaves to the district judge.

[3] The Court notes the substance of Count V appears entwined with the substance of Counts II and III, such that its substance may come up in support of either of those counts.

**Claim for Damages**

In his complaint, Plaintiff "prays for judgment in his favor against all defendants in an amount sufficient to compensate him for pain, suffering, mental anguish." (Doc. 1 at 7.) Prisoners cannot sue for compensatory damages for mental or emotional harm alone; rather, they must show physical injury. 42 U.S.C. § 1997e(e) (" No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"). Plaintiff's complaint does not allege any physical harm. As a result, Plaintiff may sue for nominal damages or injunctive relief but not compensatory damages. *Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001). Therefore, Plaintiff's claims should be dismissed under § 1915(e)(2)(B)(i), (ii) and 42 U.S.C. § 1997e(e) insofar as they seek compensatory damages.

## IV.  Conclusion

Plaintiff has pleaded plausible claims, except as to Counts III and V. With respect to Counts III and V, the Court grants Plaintiff an opportunity to file an Amended Complaint correcting the deficiencies identified in this Order. However, as to all claims, Plaintiff may not recover monetary damages for these claims, as he has not alleged any physical harm as required by 42 U.S.C. § 1997e(e).

**IT IS THEREFORE ORDERED BY THE COURT** that within twenty-one (21) days of receipt of this Order, Plaintiff shall file an Amended Complaint correcting the deficiencies identified in this Order.

Dated July 6, 2017, at Kansas City, Kansas.

S/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge